936 P.2d 1330

**STATE of Idaho, Plaintiff–Respondent,**

v.

**Alvin D. REUTZEL, Defendant–Appellant.**

**No. 21799.**

Court of Appeals of Idaho.

March 10, 1997.

Rehearing Denied May 6, 1997.

Van G. Bishop, Canyon County Public Defender, Nampa, for appellant.

Alan G. Lance, Attorney General, Michael A. Henderson, Deputy Attorney General, Boise, for respondent.

LANSING, Judge.

Alvin Reutzel appeals his conviction and sentence for felony escape, I.C. § 18–2505, raising the following issues: (1) whether the failure to hold his preliminary hearing within the time limits established by the Idaho Criminal Rules requires reversal of his conviction; (2) whether he was afforded his constitutional and statutory right to a speedy trial; (3) whether criminal prosecution for his escape was barred by double jeopardy and res judicata; (4) whether juror misconduct denied him a fair trial; (5) whether the sentence imposed by the district court was unreasonable; and (6) whether the district court abused its discretion in denying Reutzel's motion for reduction of sentence. Finding no error, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

On June 4, 1993, while serving a sentence for grand theft, Reutzel walked away from the Nampa Community Work Center. On June 8, 1993, the Canyon County Prosecuting Attorney's office filed a complaint charging Reutzel with escape by one charged with or convicted of a felony, I.C. § 18–2505. Reutzel was arrested in Kootenai County on December 5, 1993, and was brought before a Kootenai County magistrate for an initial appearance on the following day. On December 22, 1993, Reutzel was transported on a Department of Correction bus to the Canyon County Jail. However, jail officials refused to accept custody of Reutzel, apparently because they viewed him to be in the custody of the Department of Correction. He was then taken to the Idaho State Correctional Institution (ISCI) near Boise. Five days later, on a motion of the Canyon County prosecutor, the district court issued an order that Reutzel be transferred to the custody of the Canyon County sheriff and transported to the county jail. An initial appearance before a Canyon County magistrate was scheduled for January 12, 1994, and Reutzel appeared with counsel. A preliminary hearing was then conducted on January 26, 1994. Following the preliminary hearing, Reutzel was bound over for trial on the escape charge.

Reutzel pleaded not guilty, and the court set a trial date of May 10, 1994 as a third priority setting, with an alternative date of June 2, 1994 as a first priority setting. In April 1994, Reutzel filed a motion to dismiss his retained counsel, asserting that his counsel was ineffective, and requested that the public defender be appointed to represent him. At a hearing on May 9, 1994, the court granted the motion and appointed the public defender to represent Reutzel. The new defense attorney advised the court that he was concerned about being ready for trial by June 2, 1994. On June 1, 1994, defense counsel requested a continuance, which was granted, and the court set a new trial date of September 8, 1994.

Before trial, Reutzel filed two motions to dismiss the charge, one based upon a claim that he had been denied a speedy trial and the other on grounds that Reutzel's preliminary hearing had not been held within the time required by Idaho Criminal Rule 5.1. The court denied both motions. Just prior to trial, defense counsel filed another motion to

dismiss based upon the fact that the classification committee of the Department of Correction, after a hearing regarding the circumstances of his departure from the Nampa Community Work Center, recommended that Reutzel be placed in medium security at ISCI. The defense asserted that because of this action by the Department of Correction, Reutzel's prosecution for felony escape was precluded by principles of double jeopardy, res judicata, equitable estoppel and stare decisis. This motion was not granted.

Following a jury trial in which he was found guilty of felony escape, Reutzel filed a motion for a new trial based upon an alleged undisclosed relationship between a member of the jury and a defense witness. This motion was denied. At sentencing, the court imposed a unified sentence of five years with a minimum period of incarceration of one year, to be served consecutively with any sentence that had been imposed prior to the time of escape. Reutzel's subsequent motion seeking reduction of his sentence was denied. Reutzel then brought this appeal.

## ANALYSIS

### A. Delay in the Preliminary Hearing

Reutzel contends that because his preliminary hearing was not conducted within fourteen days from his initial appearance,[1] as required by I.C.R. 5.1(a), the charge against him should have been dismissed.[2] The time elapsed between Reutzel's initial appearance in Kootenai County on December 6, 1993, and his preliminary hearing in Canyon County on January 26, 1994, was fifty-one days, more than three times the maximum period allowed by the rule.

■ Rule 5.1(a) expressly authorizes extension of the time limits upon a showing of "extraordinary circumstances." In *State v.*

*Bell,* 115 Idaho 81, 764 P.2d 448 (Ct.App. 1988), we held that justification for an extension may include delays brought on by factors not within the direct control of the prosecutor or law enforcement officials. *Id.* at 84, 764 P.2d at 451. The district court's denial of Reutzel's motion to dismiss was based upon its finding that the delay in this case was not the responsibility of the prosecutor or county law enforcement officials. We conclude that this finding is not supported by the record.

We note at the outset that the Rule 5.1(a) fourteen-day time limit expired two days before Reutzel was even transported from Kootenai County. The record contains no explanation as to who was responsible for this delay in the transfer of the defendant. Even assuming, however, that the Canyon County prosecutor and law enforcement officials cannot be charged with this delay, there was further delay for which they bear responsibility. The prosecutor did not take steps to schedule a preliminary hearing even within fourteen days of Reutzel's transport from Kootenai County. Moreover, upon Reutzel's arrival in Canyon County, the local jail officials, without justification, refused to accept him into local custody. This decision apparently contributed to the delay of further proceedings. On these facts, we cannot conclude that extraordinary circumstances justified the fifty-one day lapse between Reutzel's initial appearance and his preliminary hearing.

■ It does not follow, however, that dismissal of the charge against Reutzel is required. Rule 5.1(a) specifies no remedy for or consequence of its violation. Our Supreme Court has held, however, that the postponement of a preliminary examination beyond the time allowed by a statutory predecessor of Rule 5.1 did not deprive the

---

1. An initial appearance must be provided within twenty-four hours following an arrest, excluding Saturdays, Sundays and holidays. I.C.R. 5(b).

2. Rule 5.1(a) provides in relevant part:
   [A] defendant, when charged in a complaint with any felony, is entitled to a preliminary hearing.... If the defendant does not waive the preliminary hearing, the magistrate shall fix a time for the preliminary hearing to be held within a reasonable time, but in any event not later

than fourteen (14) days following the defendant's initial appearance if the defendant is in custody and no later than twenty-one (21) days ... if the defendant is not in custody.... In the absence of such consent by the defendant [to extend the time limit], time limits may be extended only upon a showing that extraordinary circumstances exist, including disqualification of the magistrate by the defendant pursuant to Rule 25.

erring court of jurisdiction. *State v. Main,* 37 Idaho 449, 455, 216 P. 731, 732 (1923). We are also mindful of the directive of I.C.R. 52 that "[a]ny error, defect, irregularity or variance which does not affect substantial rights shall be disregarded." *See also State v. Streeper,* 113 Idaho 662, 747 P.2d 71 (1987); *State v. Mitchell,* 104 Idaho 493, 660 P.2d 1336 (1983); *State v. Hardman* 121 Idaho 873, 828 P.2d 902 (Ct.App.1992); *State v. Garza* 109 Idaho 40, 704 P.2d 944 (Ct.App. 1985). We therefore hold that, in the absence of oppressive conduct on the part of the State or demonstrated prejudice to the defendant, a violation of the Rule 5.1(a) time limit does not warrant dismissal of the charge against the defendant. We join numerous other jurisdictions in this determination. *See, e.g., State v. Wrightsil,* 13 Ariz. App. 111, 474 P.2d 470 (1970) (holding that there is no prejudice to defendant or denial of due process because of delay in holding preliminary hearing); *State v. Gilbert,* 105 Ariz. 475, 467 P.2d 63, 65 (1970) (holding that unreasonable delay in scheduling preliminary hearing does not, in itself, make all other acts thereafter unlawful and void); *State v. Caffey,* 438 S.W.2d 167 (Mo.1969) (holding that delay in providing preliminary hearing, though illegal, will not invalidate conviction in the absence of prejudice resulting from the detention); *State v. Thomas,* 236 Neb. 84, 459 N.W.2d 204, 210 (1990) (holding that delay in conducting preliminary hearing was not reversible error in the absence of showing that the delay was oppressive or prejudicial); *State v. Tollardo,* 99 N.M. 115, 654 P.2d 568, 570 (N.M.Ct.App.1982) (Dismissal is not proper remedy for a delay in holding a preliminary examination when prejudice to the defendant has not been shown.); *State v. Warner,* 86 N.M. 219, 521 P.2d 1168, 1170 (N.M.Ct.App.1974) (assuming a rule violation, remedy is not dismissal if there is no showing of prejudice); *Commonwealth v. DeCosey,* 246 Pa.Super. 412, 371 A.2d 905 (1977) (holding that noncompliance with time limit for preliminary hearing did not compel dismissal of the charges and no prejudice was shown to have resulted).

■ An important purpose of requiring prompt preliminary hearings is to prevent protracted incarceration of an accused before there has been a judicial determination of probable cause for his loss of freedom. Here, however, because Reutzel was already serving a sentence for a previous felony, his incarceration while awaiting the preliminary hearing was not oppressive. Further, Reutzel did not at any time object to the date of the preliminary hearing or seek to move it forward, and he does not claim that his ability to prepare his case for trial was impaired by the untimeliness of the hearing. There is no indication that the delay was purposeful or the result of an intent to oppress on the part of the prosecutor or other government agents. Consequently, we conclude that Reutzel's motion to dismiss the escape charge because he did not receive a timely preliminary hearing was properly denied, albeit on grounds other than those upon which the district court based its decision.

■ We do not imply that a violation of the Rule 5.1(a) time limit should be condoned. Dismissal of criminal charges may result from noncompliance with this rule where the necessary prejudice or oppression is demonstrated. Moreover, where dismissal is not justified, the trial courts may fashion other remedies appropriate to the circumstances of an individual case. We hold only that on the facts presented here, no right to the requested relief has been shown.

## B. Speedy Trial

We next consider Reutzel's contention that he was not provided a speedy trial as guaranteed by the Sixth Amendment to the United States Constitution, Article I, § 13 of the Idaho Constitution and I.C. § 19–3501.

■ Whether a defendant has been denied his right to a speedy trial presents a mixed question of law and fact. *State v. Wavrick,* 123 Idaho 83, 86, 844 P.2d 712, 715 (Ct.App. 1992). On reviewing a trial court's determination of this issue, we defer to factual findings if they are supported by substantial evidence, but we freely review the application of constitutional principles to the facts found. *State v. Weber,* 116 Idaho 449, 452, 776 P.2d 458, 461 (1989); *Wavrick, supra.*

In *Barker v. Wingo,* 407 U.S. 514, 530, 92 S.Ct. 2182, 2191–92, 33 L.Ed.2d 101 (1972), the United States Supreme Court established a balancing test that is employed in evaluating whether the Sixth Amendment right to a speedy trial has been violated. Four factors are considered: (1) the length of the delay of the trial; (2) the reason(s) for the delay; (3) the defendant's diligence in asserting his right; and (4) prejudice to the defendant occasioned by the delay. *Id.* This same test is applied to claims based on the Idaho Constitution's speedy trial guarantee. *State v. Russell,* 108 Idaho 58, 62, 696 P.2d 909, 913 (1985); *State v. Lindsay,* 96 Idaho 474, 531 P.2d 236 (1975).

■ Here, a period of nine months elapsed between Reutzel's arrest and his trial in September 1994. However, he was initially given a trial date of May 10, with a backup date of June 2, 1994. The four-month delay between his initial trial setting and his ultimate trial was entirely attributable to Reutzel's decision to discharge his attorney and request appointment of new counsel shortly before the first trial date. The fact that Reutzel was responsible for this delay weighs heavily against his claim for relief. *See State v. Higgins,* 122 Idaho 590, 603, 836 P.2d 536, 549 (1992); *Russell,* 108 Idaho at 62–63, 696 P.2d at 913–14; *State v. Talmage,* 104 Idaho 249, 253, 658 P.2d 920, 924 (1983); *State v. Campbell,* 104 Idaho 705, 710, 662 P.2d 1149, 1154 (Ct.App.1983).

Reutzel argues, however, that he cannot be deemed responsible for the delay because he expressly refused to waive his speedy trial right, even at the hearing at which his newly appointed counsel requested a postponement. We are not convinced. Even if Reutzel's refusal to consent to the continuance requested by his counsel, and his express invocation of his speedy trial right, preclude a finding that he voluntarily "waived" the right, it does not prevent the delay from being attributable to the defense under the second prong of the *Barker v. Wingo* analysis. Here, Reutzel's

request for a substitute attorney made it necessary for the trial court to postpone the trial to prevent Reutzel from being prejudiced by his new attorney's inability to be prepared for the earlier trial date. Most certainly, the postponement cannot be attributed to the State.

With respect to the third *Barker* factor, Reutzel invoked his speedy trial right early in the proceedings. However, his refusal to waive this right was inconsistent with his request for a change of counsel shortly before the initial trial date. As to the fourth *Barker* factor, Reutzel makes no argument that he was prejudiced by the delay. Application of the *Barker* test to the circumstances of Reutzel's case leads to the conclusion that there has been no violation of his constitutional speedy trial right.

■ In addition to his constitutional claim, Reutzel asserts that his right to be brought to trial within six months under I.C. § 19–3501 was violated.[3] Under this statute, if the six-month standard is not met, the charges must be dismissed "unless good cause to the contrary is shown." I.C. § 19–3501; *State v. Beck,* 128 Idaho 416, 418, 913 P.2d 1186, 1188 (Ct.App.1996). To ascertain whether "good cause," within the meaning of the statute, exists, we utilize the same *Barker v. Wingo* balancing test that is applied to claims under the state and federal constitutions. *State v. Cotant,* 123 Idaho 787, 788, 852 P.2d 1384, 1385 (1993); *Russell,* 108 Idaho at 62, 696 P.2d at 913; *Beck,* 128 Idaho at 419, 913 P.2d at 1189. Accordingly, Reutzel's assertion of violation of his statutory right to a speedy trial fails for the same reason as his constitutional claims.

**C. The Classification Committee Hearing**

Reutzel was taken to the Idaho State Correctional Institution on December 22, 1993, and on February 25, 1994, an administrative hearing was held at that institution to determine the appropriate custody classification for Reutzel. The classification committee

---

3. Idaho Code Section 19–3501 provides in part:
   The court, unless good cause to the contrary is shown, must order the prosecution or indictment to be dismissed, in the following cases:
   . . . .

2. If a defendant, whose trial has not been postponed upon his application, is not brought to trial within six (6) months from the date that the indictment or information is filed with the court.

heard evidence regarding Reutzel's unauthorized departure from the Nampa Community Work Center. The Committee nonetheless recommended that Reutzel be placed in medium security custody rather than higher security administrative segregation. As an explanation for their conclusion that administrative segregation was unnecessary, the committee stated, "Inmate is very lightweight; walked away under mental duress and really doesn't pose a threat to security." According to Reutzel, the classification hearing constituted a "quasi judicial" proceeding and the committee's conclusion that Reutzel walked away under mental duress amounted to a factual finding that he had not committed the offense of escape. On this predicate, he argues that the State was collaterally estopped from continuing his prosecution for that offense.

▇▇ To prevail on his collateral estoppel argument, Reutzel must show that a five-factor test is satisfied: (1) the party against whom the earlier decision is asserted must have had a full and fair opportunity to litigate the issue; (2) the issue decided in the prior litigation must be identical to the issue presented in the subsequent action; (3) the issue sought to be precluded was actually decided by prior litigation; (4) there was a final judgment on the merits in the prior litigation; and (5) the party against whom the issue is asserted was the party or in privity with a party in the prior litigation. *State v. Gusman*, 125 Idaho 805, 874 P.2d 1112 (1994) (holding that decision at alcohol concentration test refusal hearing that defendant was not driving did not have estoppel effect in subsequent DUI case). The information in the record concerning the classification committee hearing is sparse, consisting of a single page summary of the hearing and the committee's conclusions. This report indicates that the hearing was held for the sole purpose of determining the appropriate security level for Reutzel in view of his departure from the community work center. The committee recommended medium security. This record does not demonstrate that there was a prior proceeding that amounted to "litigation," that the identical issue of Reutzel's guilt or innocence of the crime of escape was at issue or was decided in the

classification hearing, or that a final judgment resulted. Hence, the doctrine of collateral estoppel does not apply.

▇▇ Reutzel also asserts that the sentence for escape violated constitutional bars against double jeopardy because it was a second punishment, in addition to a disciplinary measure imposed by the classification committee. The double jeopardy clause of the Fifth Amendment to the United States Constitution, which is applied to the states through the Fourteenth Amendment, and Art. I, § 13 of the Idaho Constitution protect against a second prosecution for the same offense after an acquittal or conviction and against multiple punishments for the same offense. *State v. Pizzuto*, 119 Idaho 742, 756, 810 P.2d 680, 694 (1991); *State v. Colwell*, 127 Idaho 854, 857, 908 P.2d 156, 159 (Ct. App.1995). On the record before us there is no factual predicate for application of these constitutional prohibitions against double punishment. This record does not indicate that the committee even considered whether Reutzel committed the crime of felony escape, nor is there any indication that the committee imposed any sanction or punishment for such an offense. In fact, the committee's conclusion as to which security classification to impose appears to have been favorable to Reutzel. Thus, Reutzel has not been punished twice for one offense.

### D. The Motion for a New Trial

Reutzel contends that the district court erred in denying his motion for new trial, which was based upon his claim that a juror, Mr. Aultman, failed to disclose his acquaintance with one of the defense witnesses, Ms. Hawkins. During the jury voir dire, a list of witnesses was read to the potential jurors, who were then asked whether they were personally acquainted with any of the witnesses. Aultman responded that he was not. In support of his motion for a new trial, Reutzel submitted the affidavits of Ms. Hawkins and two of her relatives, which indicated that some six years previously, Hawkins' sister had dated Aultman for about two months. In addition, Hawkins, who was then twenty-five, stated that she had known Aultman

when they attended high school together and that she had once dated a Mr. Wilson, who was a friend of Aultman. That relationship had ended badly, with Hawkins threatening to obtain a restraining order against Wilson for stalking and harassing her. In her affidavit Hawkins surmises that Aultman would dislike her because of her past conflict with his friend. The district court denied Reutzel's motion for a new trial, concluding that Reutzel had not shown any juror misconduct that could have been prejudicial to Reutzel.

▮ The grounds upon which a new trial may be allowed include any juror misconduct "by which a fair and due consideration of the case has been prevented." I.C. § 19–2406(3). There is a two-fold test for determining whether a defendant is entitled to a new trial due to juror misconduct. "First, the defendant must present clear and convincing evidence that juror misconduct has occurred. Second, the trial court must be convinced that the misconduct reasonably could have prejudiced the defendant." *State v. Seiber*, 117 Idaho 637, 640, 791 P.2d 18, 21 (Ct.App. 1990). A trial judge's decision on a motion for a new trial will be upheld on appeal absent an abuse of discretion. *State v. Scroggins*, 110 Idaho 380, 716 P.2d 1152 (1985).

▮ Reutzel asserts that Aultman's inaccurate voir dire answer was juror misconduct and that Reutzel was prejudiced because, if he had known of Aultman's acquaintance with Hawkins, he would have used a peremptory challenge to remove Aultman from the jury. This, however, is not a sufficient basis to overturn a conviction where the challenge is based upon an incorrect response in juror voir dire. The standard for entitlement to a new trial based upon a juror's failure to answer honestly during voir dire was defined by the United States Supreme Court in *McDonough Power Equipment, Inc. v. Greenwood*, 464 U.S. 548, 104 S.Ct. 845, 78 L.Ed.2d 663 (1984). In that case, a juror did not disclose during voir dire that a family member had sustained an injury resulting in disability. The inaccuracy of the juror's response was not discovered until after the trial. Consequently, the plaintiffs sought a new trial, asserting that their right to exercise peremptory challenges had been prejudiced. The Supreme Court rejected this argument:

> To invalidate the result of a 3-week trial because of a juror's mistaken, though honest, response to a question, is to insist on something closer to perfection than our judicial system can be expected to give. A trial represents an important investment of private and social resources, and it ill serves the important end of finality to wipe the slate clean simply to recreate the peremptory challenge process because counsel lacked an item of information which objectively he should have obtained from a juror on voir dire examination.... We hold that to obtain a new trial in such a situation, a party must first demonstrate that a juror failed to answer honestly a material question on voir dire, and then further show that a correct response would have provided a valid basis for a challenge for cause. The motives for concealing information may vary, but only those reasons that affect a juror's impartiality can truly be said to affect the fairness of a trial.

*Id.* at 555–56, 104 S.Ct. at 850. The *McDonough* standard was adopted by the Idaho Supreme Court in *State v. Tolman*, 121 Idaho 899, 902, 828 P.2d 1304, 1307 (1992). Therefore, to obtain a new trial, Reutzel had to show both that Aultman did not give an honest response to a question during voir dire (as opposed to a response that was simply mistaken), and that an accurate response would have provided a basis for a challenge for cause.

▮ We hold that the district court did not err in concluding that Reutzel failed to satisfy this standard. First, Reutzel's evidence does not establish by clear and convincing evidence that juror misconduct actually occurred. The evidence does not indicate that the acquaintance between Hawkins and Aultman was anything more than slight. Although they had mutual acquaintances, with a history of Hawkins' dating Aultman's friend and Aultman dating Hawkins' sister, this does not indicate that Aultman and Hawkins were, themselves, well acquainted. The last personal contact between Aultman and Hawkins

identified in the affidavits occurred approximately six years prior to the trial. The district court could properly find that this evidence did not show, clearly and convincingly, that Aultman gave a dishonest response, as opposed to merely being mistaken or not recognizing Hawkins' name, when he was asked if he was acquainted with any of the witnesses.

As to the second prong of the *McDonough* test, Reutzel did not demonstrate that Aultman's acquaintance with Hawkins would have provided a basis for a challenge for cause. Among the grounds for challenges for cause that are set forth in I.C. §§ 19–2018 through 19–2020, the only one that might be applicable here is the existence of actual bias, which is defined as "the existence of a state of mind on the part of the juror in reference to the case, or to either of the parties, which, in the exercise of a sound discretion on the part of the trier, leads to the inference that he will not act with entire impartiality...." I.C. § 19–2019(2). There is nothing in the record to show that Aultman would have had such a state of mind here simply because of his acquaintance with defense witness Hawkins.

### E. Sentence

■■■■■■ For this felony escape, the district court sentenced Reutzel to a minimum term of one year's incarceration, followed by an indeterminate term of four years. Reutzel contends that this represents an abuse of the trial court's sentencing discretion. Where a sentence is not illegal, it will not be disturbed on appeal unless the appellant shows that it is unreasonable, and thus a clear abuse of discretion. *State v. Brown,* 121 Idaho 385, 393, 825 P.2d 482, 490 (1992). A sentence of confinement is reasonable if it appears at the time of sentencing that confinement is necessary "to accomplish the primary objective of protecting society and to achieve any or all of the related goals of deterrence, rehabilitation or retribution applicable to a given case." *State v. Hernandez,* 121 Idaho 114, 117, 822 P.2d 1011, 1014 (Ct.App.1991); *State v. Lopez,* 106 Idaho 447, 451, 680 P.2d 869, 873 (Ct.App.1984); *State v. Toohill,* 103 Idaho 565, 568, 650 P.2d 707, 710 (Ct.App.1982). Where an appellant contends

that the sentencing court imposed an excessively harsh sentence we conduct an independent review of the record, having regard for the nature of the offense, the character of the offender and the protection of public interest. *State v. Reinke,* 103 Idaho 771, 653 P.2d 1183 (Ct.App.1982).

■■■■ After independently reviewing the record, we can find no abuse of discretion in the sentence imposed. The defendant has an extensive record of prior crimes, including convictions for grand theft, embezzlement, felony insufficient funds checks, failure to appear and fraudulent checks. Reutzel's escape occurred while he was serving a sentence for the grand theft conviction. The record indicates that, in fashioning Reutzel's sentence, the district court considered his potential for rehabilitation, but also considered the importance of protecting the public and the need to deter future escape attempts by other inmates. The sentencing decision was not unreasonable.

■■■■ Reutzel also complains that the district court erred in denying his I.C.R. 35 motion for reduction of the sentence. A motion to reduce a sentence is essentially a plea for leniency, and the decision on such a motion is within the discretion of the sentencing court. *State v. Wersland,* 125 Idaho 499, 873 P.2d 144 (1994); *State v. Forde,* 113 Idaho 21, 740 P.2d 63 (Ct.App.1987). The standards for reviewing the denial of such a motion are the same as those for evaluating whether the original sentence was excessive. *State v. Shiloff,* 125 Idaho 104, 867 P.2d 978 (1994); *State v. Lopez,* 106 Idaho 447, 680 P.2d 869 (Ct.App.1984). If the sentence originally imposed was not excessive, the defendant must later show that it is excessive in view of new or additional information presented with the motion for reduction. *Shiloff,* 125 Idaho at 107, 867 P.2d at 981; *State v. Hernandez,* 121 Idaho 114, 822 P.2d 1011 (Ct.App.1991).

■■■■ To support his I.C.R. 35 motion, Reutzel presented evidence concerning his potential for rehabilitation. However, this information was largely duplicative of the evidence presented to the court at the sentencing hearing. The district court conclud-

ed that Reutzel's rehabilitation could best be accomplished through a period of confinement in a correctional institution. Reutzel has not shown that the denial of the Rule 35 motion for reduction of the sentence was an abuse of the court's discretion.

## CONCLUSION

For the foregoing reasons, the judgment of conviction, the sentence, the district court's denial of Reutzel's motion for a new trial and the denial of the Rule 35 motion for reduction of sentence are affirmed.

WALTERS, C.J., and PERRY, J., concur.